**McCAULEY BROS. SHEET METAL, INC., a corporation, Plaintiff,**

v.

**SUPERIOR–KUETEMEYER CO., INC., a corporation, Defendant.**

No. 71 C 3132.

United States District Court,
N. D. Illinois.

March 21, 1973.

Edward J. Griffin and Charles L. Byrum, Defrees, Fiske, Voland, Alberts & Hoffman, Chicago, Ill., for plaintiff.

Arvey, Hodes & Mantynband, Irwin I. Zatz and Gary D. Friedman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendant's motion to dismiss the complaint. This is a diversity action, commenced by plaintiff, McCauley Bros. Sheet Metal, Inc., against defendant, Superior-Kuetemeyer Co., Inc., alleging anticipatory breach of a contract by the defendant. The contract in question provided that plaintiff was to furnish and install a ventilation system for the McHenry County Courthouse at Woodstock, Illinois.

The defendant, for the purposes of the instant motion, has admitted the following facts: Plaintiff is an Illinois corporation. Defendant is a corporation organized under the laws of a state other than Illinois with its principal place of business in a state other than Illinois (complaint paragraphs 1 and 2). Defendant is alleged to have accepted plaintiff's bid of $292,000 to furnish and install ventilating system in McHenry County Courthouse, pursuant to a written confirmation dated March 8, 1971 of plaintiff's oral bid. Plaintiff charges that thereafter defendant breached its agreement with plaintiff by awarding the ventilation contract to another contractor. Pursuant to this alleged breach, plaintiff alleges it was damaged by a loss of profit on its contract in the amount of $70,000 (complaint paragraphs 5–10).

From the deposition of plaintiff's president taken by defendant the following facts were disclosed: Plaintiff was notified that the ventilating contract was awarded to another contractor prior to any preparation or performance by plaintiff. Plaintiff bought no equipment or material for the job (McCauley Dep. p. 23).

Defendant now moves this Court to dismiss this cause on the grounds that it appears from plaintiff's own admission that the amount in controversy, as a matter of legal certainty, is less than $10,000. In support of this motion the defendant contends:

1. Plaintiff's total material cost for the $280,000 portion of its bid amounted to $126,793. The labor for that portion of the bid was $110,159, for a total cost for labor and material of $237,952 (McCauley Dep. pp. 24–25).

2. Plaintiff took into account only a portion of its job related overhead costs. While plaintiff's actual overhead costs were 19%, plaintiff used 15% of its cost for labor and material as a "overhead cost" (McCauley Dep. pp. 24, 26–27). Thus, plaintiff took 15% of $237,952 or $35,693 for overhead which was added to the material and labor costs. This resulted in a total job cost of $273,645 out of the $280,000 portion of plaintiff's bid.

3. The total cost to plaintiff for the $12,000 portion of its bid amounted to labor and material costs of $10,542 plus overhead costs of $1,581 for a total cost to plaintiff of $12,123.

4. Therefore, it is crystal clear from plaintiff's own admissions that the amount in controversy is $6,232.00 which is far short of the jurisdictional amount.

The plaintiff, in opposition to the instant motion, contends:

1. The defendant's motion is moot because the bid figure of $237,952 for labor and material included duplications and inflated costs which resulted in lowering the cost figures and thus raising the damages (net profits) to $70,000.

2. In addition, in the instant case, the sole saving to plaintiff from loss of the contract is the job cost of $237,952 which includes "job overhead." Since no part of the other "overhead" was saved, it should not be deducted from the contract price, and plaintiff is entitled to recover its entire job profit of $42,048.

3. Therefore, there is a saving to plaintiff of $20,280 in duplications in the cost of labor and material. Further the plaintiff would have experienced an additional saving of 5% to 10% or approximately $6,000 on the balance of material needed for the work at a calculated price of $75,397. Added to this is the profit of $6,355, which was included in the bid. The plaintiff's total loss also included the overhead that would have been recovered in the sum of $35,693 on the basic bid, plus $1,458 overhead in the alternate bid. Thus, plaintiff's actual damages total $70,786 and constitute the basis for damages alleged in the complaint in the sum of $70,000.

It is the opinion of this Court that the plaintiff has sufficiently alleged the jurisdictional amount and that it cannot be shown to a legal certainty that damages in this action do not exceed $10,000 exclusive of interest and costs.

■■ It is clear that the amount in controversy cannot be made dependent on the amount the plaintiff ultimately recovers.[1] The general rule is that the sum claimed as damages by the plaintiff controls if it is apparently made in good faith.[2] Only if it appears to a legal certainty that the amount in controversy is really less than the $10,000 jurisdictional amount does jurisdiction of the Federal Court fail. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); Miami Beach Yacht Corp. v.

1. See Wright, Law of Federal Court, § 33, p. 111.

2. In order to find that a plaintiff's claim lacks "good faith" the Court must be able to conclude from the record before it that plaintiff cannot recover a sum by way of damages above the $10,000 jurisdictional floor. See Nelson v. Keefer, 451 F.2d 289 (3rd Cir. 1971).

Ferro Corp., 461 F.2d 770 (5th Cir. 1972); Jefferies v. Silvercup Bakers, Inc., 434 F.2d 310 (7th Cir. 1970); Jones v. Landry, 387 F.2d 102 (5th Cir. 1967); Anderson v. Moorer, 372 F.2d 747 (5th Cir. 1967).[3] See note, Nelson v. Keefer: Toward a More Effective Application of Legal Certainty Test, 45 Temp.L.Q. 305 (1972).

In the instant action it has not been shown to a legal certainty that the plaintiff will not recover an amount in excess of $10,000 exclusive of interest and costs. The plaintiff contends that damages exceed $70,000 while defendant's claim damages are $6,232.00. There are differing theories of damages, varying interpretations of a deposition, and conflicting affidavits. The plaintiff claims inflation and duplication in the amount allowed for materials, which would be recoverable net profit to the plaintiff while the defendant denies such claims. The plaintiff claims that $35,693 cited in the original bid as a 15% overhead was really a type of net profit while the defendant claims that the $35,693 figure is really overhead and not recoverable.

Regardless of which of these arguments will eventually prevail on the merits, it is obvious that the elements of damages is presently very much the subject of a good faith controversy.[4] Further, there can be no legal certainty as to whether plaintiff's damages fail to meet the jurisdictional amount because there is a serious dispute, yet unresolved by proof, of whether there was duplication, inflation and expansion of the job cost to the extent that actual and con-

templated net profits would be in fact in excess of $10,000.

Accordingly, it is hereby ordered that the defendant's motion to dismiss is denied.

---

3. The Seventh Circuit recently noted:
    It is not incumbent upon a plaintiff to show to an absolute certainty that he will obtain a verdict in excess of $10,000. Instead, before a suit will be dismissed for lack of jurisdiction, it must appear to a legal certainty that he will not recover that amount. Jefferies v. Silvercup Bakers, Inc., *supra*, 434 F.2d at 311–312.

4. The plaintiff and defendant have presented differing theories of damages. Since there could be no certainty from the documents presented thus far as to whether there was duplication, inflation and expansion of the actual job cost by the plaintiff, there is no need to decide at the present time the proper theory of damages.