**BAUSCH & LOMB INCORPORATED, a New York Corporation, Plaintiff,**

**v.**

**CIBA CORPORATION, a Georgia Corporation, Commonwealth Scientific and Industrial Research Organization, an Australian Corporation, Defendant.**

**No. 98–CV–6586L.**

United States District Court, W.D. New York.

March 17, 1999.

Michael Wolford, Wolford & Leclair LLP, Rochester, NY, for Bausch & Lomb Incorporated, a New York Corporation, plaintiff.

Douglas Jones, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, Laura J. DeMoor, Mark T. Banner, Timothy C. Meece, Banner & Witcoff, Ltd., Chicago, IL, for CIBa Vision Corporation, a Georgia Corporation, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

**INTRODUCTION**

Plaintiff, Bausch & Lomb Incorporated ("B & L"), commenced this action on December 12, 1998. The original complaint sought a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring three patents held by defendants CIBA Vision Corporation ("CIBA") and Commonwealth Scientific and Industrial Research Organization not to be infringed by B & L's manufacture and distribution of its PureVision contact lenses, and if infringed to be invalid. The complaint also sought a judgment declaring B & L's noninfringement of CIBA's "Pure Eyes" trademark.

On January 12, 1999, CIBA filed a motion to dismiss the complaint on the ground that no "actual controversy" existed between the parties at the time the complaint was filed, as required by 28 U.S.C. § 2201(a). On February 12, 1999, B & L filed an amended complaint, which adds a fourth claim of noninfringement of a patent.

Thereafter, CIBA commenced a lawsuit in the Northern District of Georgia on March 8, 1999, alleging B & L's infringement of the same patents and trademark at issue in the case at bar. After reviewing the record, I conclude, first, that this court lacks jurisdiction over the subject matter of this case and, second, that even if jurisdiction does exist, the complaint should be dismissed in favor of the infringement action now pending in Georgia.

Although, the Court had previously scheduled oral argument, upon further review, and in view of the pendency of argument and hearings in the Georgia case within the next few days, I have determined that argument is not necessary.

**DISCUSSION**

A district court's jurisdiction under the Declaratory Judgment Act extends

only to those cases in which there is an "actual controversy" between the parties. 28 U.S.C. § 2201(a). In an action brought to establish the absence of patent infringement, the "actual controversy" requirement is satisfied if: (1) the plaintiff has produced or is prepared to produce the allegedly infringing product; and (2) defendant's conduct created an objectively reasonable apprehension on the part of plaintiff that it will face a lawsuit if the allegedly infringing activity continues. *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed.Cir.1998); *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481 (Fed.Cir.1996). This objective test is to be applied to the facts as they existed at the time the complaint was filed. *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed.Cir.1992). The fact that the patentee filed an infringement action subsequent to the filing of the declaratory judgment action is not dispositive. *See id.* at 1297 n. * (describing declaratory judgment defendant's later-filed infringement action as "irrelevant"); *accord Publications Intern., Ltd. v. Futech Educ. Products, Inc.*, No. 97 C 236, 1997 WL 627641 *8 (N.D.Ill. Oct. 1, 1997).

In support of its assertion that there was an actual controversy between the parties at the time this suit was commenced, B & L relies on the following allegations. In November 1998, George Grobe, B & L's Director of Surface Science, who is involved in developing B & L's PureVision lenses, received a telephone call from Bernie Rapp, a sales rep for MetroLine Industries, which supplies plasma equipment to B & L for use in the PureVision lenses. Rapp allegedly said that he had recently spoken to Dr. Lynn Winterton, a CIBA scientist, who told Rapp that CIBA was going to sue B & L for patent infringement because B & L's lenses infringed on CIBA's patents. Plaintiff alleges that Dr. Winterton is a named co-inventor on CIBA's patent application, and that he has been the spokesman for CIBA at technology symposia relating to these lenses. At some point after this telephone conversation, however, Grobe learned that Rapp had not received this information directly from Dr. Winterton, but from an unnamed third party, who allegedly received it from Dr. Winterton. Declaration of George L. Grobe III, Plaintiff's Memorandum of Law Ex. B, ¶ 13.

B & L also states that its scientists had been hearing "rumors," also from an unnamed source, that CIBA was going to sue B & L. In response to these rumors, B & L did some testing on its lenses to see if they infringed CIBA's patents, and also obtained the opinion of counsel in this regard.

In support of its claim of noninfringement of CIBA's trademark, B & L notes that after the Patent and Trademark Office ("PTO") approved B & L's PureVision mark, CIBA filed a notice of opposition asking the PTO to refuse to register the PureVision mark.

CIBA takes the position is that none of these allegations give rise to an actual controversy at the time B & L filed its complaint. CIBA contends that B & L relies upon nothing but unsubstantiated rumors and double hearsay. CIBA also contends that Dr. Winterton did not have actual or apparent authority to make the alleged statements about CIBA suing B & L.

I agree that B & L's allegations are insufficient to confer jurisdiction upon this court. For one thing, there is no allegation of any direct contact between CIBA and B & L concerning possible patent or trademark infringement. *See West Interactive*, 972 F.2d at 1297–8 (district court did not err in concluding that plaintiff lacked reasonable apprehension of suit where there was no contact between plaintiff and defendant); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed.Cir.1992) (plaintiff did not meet burden of proving that actual controversy existed between it and defendant where defendant made no

assertive contact concerning patents at issue).

B & L's reliance on unattributed "rumors," to use its own characterization, warrants little comment. Were mere rumors sufficient to give rise to an actual controversy for purposes of § 2201(a), the actual-controversy requirement would be rendered practically meaningless. *See Emme Bridal Inc. v. Milady Bridals Inc.*, 46 U.S.P.Q.2d 1555, 1561, 1998 WL 241202 (S.D.Tex.1998) ("Rumor, speculation, gossip, or unfounded conjectures alone will not support jurisdiction in this case"). B & L has cited no cases holding otherwise, and indeed most of its discussion of the case law is devoted more to attempting to distinguish the cases cited by CIBA than to cite any relevant cases in support of its claims.

Nor are the alleged statements by Dr. Winterton enough to show the existence of an actual controversy. As the district court in *West Interactive* stated with regard to alleged statements by the inventor of certain patented devices and an employee of the defendant's subsidiary to the effect that the plaintiff was violating the patents, these statements are "nothing more than recitation of a hearsay comment." *West Interactive*, 972 F.2d at 1296.

Moreover, there is no showing that Dr. Winterton had actual or apparent authority to make such statements on CIBA's behalf. "To create a controversy between plaintiff and the patentee, an agent must have actual or apparent authority to level a charge of infringement on behalf of the patentee." *Sherman Treaters, Ltd. v.. Ahlbrandt*, 607 F.Supp. 939, 943 (D.D.C.), *aff'd*, 785 F.2d 322 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 185 (1986). Merely because Dr. Winterton is employed by CIBA and is listed as a co-inventor on CIBA's patent application is not enough to invest him with such authority. Whether to sue B & L was not his decision to make, and B & L could not reasonably have thought otherwise. *See Emme Bridal*, 46 U.S.P.Q.2d at 1556 (no actual controversy where plaintiff had received no notice, warning or threat of copyright violation from defendant, but only from third party's attorney); *Sherman Treaters*, 607 F.Supp. at 944 (plaintiff wrongly assumed that the entity that had made the charge of infringement was defendant's spokesman).

B & L's claim relating to CIBA's trademark presents no more of an actual controversy that the patent claims. The only evidence in support of B & L's contention that there existed an actual controversy regarding this matter is CIBA's filing of a trademark opposition. B & L acknowledges that this alone is not enough to support declaratory judgment jurisdiction. *See Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir.1963); *American Pioneer Tours Inc. v. Suntrek Tours Ltd.*, 46 U.S.P.Q.2d 1779, 1782 (S.D.N.Y.1998). B & L's attempt to link the opposition to Dr. Winterton's statements and the aforementioned rumors also fails, since Winterton's statements related only to the patents, and the rumors are simply too weak a foundation for jurisdiction, whether viewed alone or in combination with other evidence.

Even if I did find that B & L had met the actual-controversy requirement, however, I would decline to exercise jurisdiction. The Declaratory Judgment Act gives district courts a "unique breadth of ... discretion to decline to enter a declaratory judgment" even if jurisdiction exists. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (quoted in *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed.Cir.1996).) This is consistent with the principle that "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., dissenting)), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Therefore, "even if there is an actual controver-

sy and thus jurisdiction, the exercise of that jurisdiction rests within the sound discretion of the district court." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed.Cir.1998). *See, e.g., EMC Corp.*, 89 F.3d at 810; *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed.Cir.1995).

I recognize that the pendency of CIBA's infringement suit in Georgia is not enough in itself to warrant dismissal of this action, *EMC Corp.*, 89 F.3d at 813; *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994), but there are nonetheless several reasons why I believe this action should be dismissed and the parties should litigate these matters in the Georgia suit. First, to allow B & L to maintain this suit here rather than litigate these issues in the Georgia lawsuit would not further the policy of encouraging out-of-court settlement of disputes. I note that on the same day that B & L commenced this action, Alan P. Dozier, B & L's Corporate Vice President and President of B & L's North American Vision Care division, sent a letter to CIBA's President advising him that the complaint had been filed, but also suggesting that the parties attempt to settle the dispute. Defendant's Reply Memorandum Ex. C. If B & L had genuinely wanted to resolve the dispute amicably, it could have sought to do so without starting a lawsuit. It appears, then, that this action was designed in part as a weapon to strengthen B & L's hand in any negotiations. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir.1996) (district court could properly view declaratory judgment complaint as a tactical measure filed in order to improve plaintiff's negotiating position, and to conclude "that this case was not one that furthered the objectives of the Declaratory Judgment Act"), *cert. denied*, 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997); *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F.Supp. 1155, 1160 (W.D.N.Y. 1987) (finding that to allow declaratory judgment action to proceed under the circumstances of the case would discourage good-faith effort to negotiate).

Moreover, given the lack of evidence that B & L had indicating that CIBA was likely to bring an infringement action against it, allowing the action to go forward would encourage forum shopping and the filing of premature, purely anticipatory declaratory judgment complaints, which are not among the purposes the Declaratory Judgment Act was designed to promote. *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 908 (N.D.Ill.1998).

## CONCLUSION

Defendants' motion to dismiss the complaint (Item 2) is granted, and the complaint is dismissed. Defendants' motion for leave to file reply papers (Item 28) is granted.

Plaintiff's motion in this Court to disqualify defendants' counsel (Item 7) is denied as moot.

IT IS SO ORDERED.